Dear Mr. Stephens:
This is in response to your letter of October 24, 1988, concerning the coastal use permit application submitted by Marine Shale Processors (MSP), Inc. on October 11, 1988.
According to the permit application, the proposed activity is described in paragraph 4a as follows:
 Install and maintain a bulkhead and fill in an existing unimproved barge slip located on applicant's property on the north bank of the Bayou Boeuf reach of the Gulf Intracoastal Waterway (GIWW).
From a review of the application, it appears that a barge slip was dredged into the north bank of Bayou Boeuf, extending 260 feet east of the north bank of the Gulf Intracoastal Waterway. As stated in paragraph 4c of the permit application, the project does not involve dredging. However, an anchored sheet pile retaining wall will be installed across the mouth of the slip and approximately 7,600 cubic yards of fill material will be placed in the area of the previously excavated barge slip located on applicant's property. It is also stated in the Supplemental Information Section of the Coastal Use Permit Application, that "The applicant, Marine Shale Processors, Inc. (MSP), operates an industrial furnace on the north bank of the Bayou Boeuf reach of the Gulf Intracoastal Waterway (GIWW), just west of Amelia, Louisiana. This bank also forms the boundary of Louisiana's Coastal Zone. Because the facility shares a boundary with the coastal zone, this application is submitted to the Coastal Management Division (CMD) of the Louisiana Department of Natural Resources."
You state that if the proposed activity is determined to be "within the coastal zone," as defined by statute, you will be technically required to issue public notice of the application within ten (10) days of the day on which the application was received. In this connection, you have asked for an opinion of this office on three issues:
 (1) What is the legal definition of the "northern bank of the Gulf Intracoastal Waterway" under Louisiana law, for purposes of coastal management regulation?
 (2) If the barge slip cited in the MSP application was in existence prior to the effective date of Act 361 of 1978, did it legally become part of the "northern bank" on the effective date of the Act (Jan. 1, 1979)?; and
 (3) If the barge slip cited in the MSP application came into existence on or subsequent to the effective date of Act 361, has it legally become part of "the northern bank of the GIWW" for purposes of coastal management regulation?
As stated in your request, decision-making on applications for coastal use permits is governed by the State and Local Coastal Resources Management Act of 1978, placed in the Revised Statutes as R.S. 49:213.1, et seq. Under R.S. 49:213.4 (C), the northern boundary of the coastal zone in the area of the proposed project is described as "thence along the northern bank of the Gulf Intracoastal Waterway to the vicinity of the Bayou du Large Ridge . . ." Because the northern bank" is not defined in any greater detail, it is necessary to look to other applicable Louisiana law defining "bank."
Article 456 of the Louisiana Civil Code provides as follows:
 Art. 456. Banks of navigable rivers or streams.
 The banks of navigable rivers or streams are private things that are subject to public use.
 The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.
Consequently, it can be seen that the "bank" is the land or area lying between ordinary low and ordinary high. Where a levee is present, the levee shall form the bank within these same limits.
Thus, in response to your inquiry No. 1, we find that the legal definition of the "northern bank" of the Gulf Intracoastal Waterway is that area of land lying between the ordinary low and ordinary high stage of water.
With respect to your inquiry No. 2, we find that if the barge slip cited in the application was in existence prior to the effective date of Act 361 of 1978, it became a part of the "northern bank" on the effective date of the Act, to the extent that its mouth is co-terminous with the bank.
With respect to your inquiry No. 3, if the barge slip cited in the application came into existence on or subsequent to the effective date of Act 361 of 1978, we find that it has legally become part of the "northern bank" for purposes of coastal management regulation. In this regard, paragraph 4a of the application itself states that the barge slip is located on applicant's property on the north bank of Bayou Boeuf. Paragraph 4c clearly states that anchored sheet piling will be placed as a protective bulkhead "across the mouth of the slip"; and that "7,600 cubic yards of fill material (including about 700 cubic yards of sand adjacent to the wall) will be placed into the slip."
It therefore appears from the face of the application that the proposed project will be occuring at least partially within the statutorilly defined boundaries of the coastal zone. Particularly, it is noted that the project will be occuring "on the north bank of the Bayou Boeuf" (paragraph 4a).
For these reasons, we find that this project is subject to the State and Local Coastal Resources Management Act of 1978, as amended, and that a permit is required for such proposed coastal uses, as defined by statute.
This opinion is based upon our evaluation of the facts presented with the application, together with a review of applicable statutory materials and reference to maps which pertain to the legally defined boundaries of the coastal zone. While it is possible that there could be some physical anomaly concerning the construction of the barge slip and its location with regard to the northern boundary of the coastal zone in this area, absent further information, it is our conclusion that the project does fall squarely within the regulation of the Louisiana Coastal Zone Management Program.
If we may be of further help in connection with this inquiry, please advise us.
Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: ____________________________ GARY L. KEYSER Assistant Attorney General
GLK/jb
OPINION NUMBER 87-526
63 Levees, Drainage District Flood Control 72 Navigable Waters 90-B-3 Public Lands — Public Private domains, distinctions 172 Waters Water Courses — Boats, Motorboats Vessels Louisiana Civil Code Art. 456
Louisiana Civil Code Art. 460
River and Harbor Act of 1899, Sec. 10 Clean Water Act, Sec. 404 Marine, Protection, Research and Sanctuaries Act, Sec. 103
Riparian owner owns the bank of navigable rivers to ordinary low water and may exercise the rights of ownership subject to the rights of public use and the exercise of municipal, state and federal authority.
Mr. W. C. Holcomb Chief Deputy Office of the Sheriff Tax Collector Winnsboro, Louisiana 71295
Re: Op. No. 87-526 — Jurisdiction over Mississippi River Banks